Gaston, J.
 

 The case now before us has grown out of the dispute respecting the location of the seat of justice in Henderson county, which has already more than once been brought under our notice. See
 
 State
 
 v
 
 King
 
 & others, 4 Dev. & Bat. 521.
 
 State
 
 v
 
 Jones
 
 & others, 1 Ire. 129. And
 
 Same
 
 v
 
 Same,
 
 1 Ire. 414.
 

 The Legislature, at its last session, in the hope oí putting an end to this harrassing controversy,- passed an act (Acts of 1840, ch. 53) by which it was declared that the question of location should be decided by the qualified freeholders of the county; that for this purpose an election should- be' held, on the last Thursday of January 1841, in each ol the election precincts of the County, to take the ballots or suffrages of the freemen- of the County on the question; that if the point selected by the majority of the voters should be nearer to the Buncombe Turnpike Road than to the French Broad River, George Allen, Andrew Maxwell Jr. David Rees, joh-n Davis and James Spann, should be the commissioners to procure the land and lay off the
 
 town
 
 for
 
 *185
 
 the seat of justice; but if the point selected by the majority should be nearer to the River than the Road, then Martin Gash, David Miller, John Hightower, Isaac Glarnier and Col. John Clayton should be the commissioners to execute these duties. To insure impartiality and fairness in the election it was, among other things enacted, that the sheriff should appoint two judges for each election precinct, the one from the Eastern and the other from the Western section of the County, who should be sworn to conduct the election fairly and according to the usual manner of conducting elections in this State; that the sheriff and two commissioners, to be by him selected’ten days before the election, should, from a comparison of the returns from all the precincts, ascertain and pronounce the point having the greatest number of votes; and that the sheriff should thereupon notify the persons, who according to that result, were appointed commissioners, and swear them to discharge faithfully the duties by the act imposed. The election was had, the sheriff and the two commissioners by him appointed, upon a comparison of the returns from all the precincts, pronounced that a certain point upon the Road had received a majority of the votes of all the qualified voters in the County; the sheriff notified the first named set of commissioners thereof, and they took the prescribed oath of office and entered upon the performance of its duties. At the April Term, 1841, of the Superior Court of Buncombe, an information in the nature of a
 
 quo warranto
 
 was filed, wherein it was charged that the sheriff, disregarding the provisions of the act and fraudulently contriving and intending to obtain a majority of votes in favour of a point near the Road, did at one of the Precincts, called the Flat-Roclc precinct, appoint three judges to conduct the election thereat; of whom two, viz. Benjamin King and Meredith. Freeman, were from the Eastern and one only, viz. Joseph E. Patton from the Western section of the County. — that “many persons at the election for said precinct tendered their votes to the two Judges, Patton and Freeman, who rejected the same upon the ground that they were not qualified voters,”. — that “especially one Berry Fowler tendered his vote to the said judges Patton and Freeman, and the
 
 *186
 
 same was rejected by them, but was afterwards received b y King, the other judge,” and was counted in the enumeration of the votes polled at that precinct. The information iurt^er set that the original return made out and signed by the judges of the Clear Creek election precinct was lost, and “that a fraudulent copy thereof was substituted in its place contrary to the true intent and meaning of the said act.” It averred, that if all the votes given at the Flat-Rock election, or all those given at the Clear Creek election had been rejected, a clear majority of the votes was cast in fa-vour of a point on the River, and insisted, that because of the matters charged, the elections at Flat-Rock and Clear Creek, and the returns of the polls thereat were altogether illegal, and the votes there taken ought to have been altogether rejected by the sheriff and commissioners of the election; that it should have been declared that the point on the River had received the majority of votes; and that the second named set of commissioners should have been admitted into the office so as aforesaid usurped by the first named set of commissioners. The information prayed that due process of law might issue against the said usurping commissioners and the sheriff, requiring of them to make answer thereto.
 

 Upon the filing of this information, it was ordered by the Court that a writ of prohibition
 
 •pendente lite
 
 should issue, and also that writs of subpeena should issue to the parties defendants in said information. A writ of prohibition thereupon issued, returnable to the October Term, 1841, of said Court, directed to the said commissioners, Allen and others by name, strictly commanding them to surcease from exercising any of the functions of commissioners under the said act, until the further order of the Court, and also a writ summoning the said persons and Robert Thomas (the sheriff) to answer the matters charged in the information. At the return term of these writs, Allen and the rest of the first named commissioners filed their answer on oath, wherein they stated that upon comparing the returns from all the election precincts, the sheriff and the commissioners for that purpose duly appointed ascertained and declared, that a point on the Road had received a majority of upwards of one hundred votes,
 
 *187
 
 and that respondents, on being notified thereof, and that on them had devolved the office of commissioners under the act of Assembly, took the oaths of office and entered upon the performance of its duties. They stated their firm conviction that a decided majority of the qualified voters of the County had given their suffrages, as by the sheriff and commissioners declared, in favour of the point on the Road ; that not more than a dozen votes had been received at all the places of election, of persons wanting the requisite qualifications, and that of all these at least half had voted for the point on the River. In answer to the alleged irregularity in conducting the Flat-Rock election, they averred the fact to be, that previously to the day of election the sheriff had appointed Joseph Patton from the Western section, and Meredith Freeman, from the Eastern section of the County to be the judges of the election at that place; that on the day of election and when the polls were about to be opened,- Freeman, one of the judges, had not come to the place of election; and,. thereupon the sheriff, who was present, appointed Benjamin King to be a Judge in his place; that Patton and King were thereupon qualified, the polls were opened and some votes received; that afterwards Freeman arrived, and to prevent all difficulty, whether he or the substituted judge should act} Freeman was invited by Patton, the Judge from the Western section, to qualify as Judge, and to unite with, and aid Pat-. ton and King in superintending the election; that thereupon Freeman did take the oath and acted as judge together with the other two judges; that in no one instance was Patton overruled by other judges, and that every vote that was taken was received under his sanction. In regard to the return of the votes of the Clear Creek Election, the respondents averred that the original return signed by the judges, and not a copy thereof as alleged in the information, was returned to the sheriff.
 

 Accompanying this answer was a statement on oath from the sheriff, settingiforth that the entire number of votes received in the County, was 817, which were as follows, viz.
 

 
 *188
 
 At the Cathey’s Creek prect. for the road 7, for the river 147
 

 Little River do do 3 do 114
 

 Free Bridge do do 63 do 68
 

 Clear Creek do do 118 do 4
 

 Flat Rock do do 272 do 21
 

 463 354
 

 Leaving a majority in lavor of the location on the road of 109 votes. He also set forth the various arrangements which he had made, as Sheriff, lor conducting the election fairly; confirmed the statement made by the Commissioners in their .answer respecting the Flat Rock election, adding that he was present thereat during the whole time, and averring that every vote there tendered was either rejected or received, with the concurrence of all the three Judges superintending the election. He also averred that the scrolls of the Clear Creek election were for a time lost, and that the same were afterwards found, and these and not a fraudulent copy, as alleged in the information, were counted by himself and the Commissioners in ascertaining the result of the election. Besides this statement, the affidavits of Joseph Patton, one of the Judges, and of John Case, clerk of the Flat Rock election, and the affidavits of M. M. Edney and Charles Hughj the Judges of the Clear Creek election, were also filed. The two former fully sustained the answer and the statement of the Sheriff in all that respected the Flat Rock election, and the two latter directly negatived the fact charged in the information, that the return of the Clear Creek election, acted on by the Sheriff and Commissioners, was a copy, and not the original signed by the Judges. It was thereupon moved by the defendants that the writ of prohibition be quashed. The Court so ordered, and from this order the Solicitor for the State was permitted to appeal to this Court.
 

 The only question before us is, whether the Superior Court erred in quashing the writ of prohibition, and we have no hesitation in answering this question in the negative. In the first place, it seems to us4that the matters charged in the information do not make out a case for a prohibition. In England, from which country we have derived all our law
 
 *189
 
 upon this subject, this writ
 
 ordinarily
 
 issues from the Court of King’s Bench, and its appropriate purpose is to restrain other Courts either from proceeding in a matter not within their jurisdiction, or from acting in a matter, whereof they have jurisdiction, by rules at variance with those which the law of the land prescribes, or from proceeding therein after a manner which will defeat a legal right. Instances, indeed, are to be found, where the writ of prohibition has been used, not to restrain the action of Courts, but to prevent individuals from committing acts of irremediable mischief—in cases of waste and nuisance. These instances, however, are not of modern occurrence, and are viewed as oí an anomalous character. The remedy now deemed appropriate is either by action, by indictment, or by bill in Equity. We have met with no case, ancient or modern, where the Court of King’s Bench has issued the writ, pending a dispute between competitors for a public office, to prohibit those, who were
 
 de facto
 
 in possession of the office, from exercising the functions thereof. And we are very confident that, if the Court have the power, it would never exercise that power, except in a very clear case peremptorily calling for this
 
 festinum remedium.
 
 See
 
 King
 
 v
 
 Justices of Dorset,
 
 15 East. 594. The
 
 gravamen
 
 of the information filed in this case is, that the constituted Judges of the election have declared one set of Commissioners in office, when, under the Act of Assembly, and by virtue of the suffrages of a majory of the qualified voters of the County, the other set was entitled to the office. What is
 
 the case
 
 made to support this
 
 gravamen 7
 
 It is not averred that a majority of the qualified voters did give their suffrages for the point on the River. It is not denied that such a majority did vote, as declared by the Sheriff and Commissioners, for the point on the Road. But it is stated that, if the votes taken at the Flat Rock or at the Clear Creek election be not counted, then there would be a majority of votes for the River location. And why are all the votes at either of these elections to be thrown aside
 
 7
 
 Not that those who gave the votes were not qualified to vote—nor that the suffrages of qualified voters were refused to be received.— nor that the result of the election was not truly set forth in the respective
 
 *190
 
 returns, but because of objections, either to the mode of conducting these elections or certifying the result of them. With respect to the Flat Rock election, it complains that three Judges were appointed to superintend it, of whom one only was from the western section of the county ; that many persons tendered their votes, which were rejected by two of the Judges; and that one person, Berry Fowler, tendered his vote, which was rejected by these two Judges, but accepted by the other. Admit that all these irregularities did occur, what is the injury thence resulting? It is not alleged that any actual wrong was thereby done — that any of the persons, other than Berry Fowler, who offered to vote, and whose suffrages were rejected by the two properlyconstituted Judges, were afterwards permitted to vote — -nor that Fowler, nor the others, nor any of them, were not duly qualified to vote. Mere irregularities ought not to destroy an election, unless they be such as might affect the result of that election, and the Court will not overrule the decision of those whom the law authorized to declare the result, unless that decision be shown to be wrong. Still more formal and more captious is the objection made to the counting of the votes taken at the Clear Creek election — “ for that the original return thereof, signed by the Judges, was lost by the returning officer, and a fraudulent copy substituted by the officer, contrary to the true intent and méaning of the Act of the Assembly.” If the fact were that “the copy” was not faithful — that it misrepresented the result of the election — unquestionably the information ought to have so stated, and we must presume would have so stated, the fact. We cannot intend that “ the copy’’ was not a true copy, because of the epithet “fraudulent” to be found in the information. What constitutes a fraud is matter of law, and no mere epithet, nor even averment, will raise the question of fraud, unless the precise facts be set forth upon which the alleged fraud arises. We must understand therefore that what is called a copy was in truth a copy, or faithfully represented the original; and if the original was indeed lost, the Sheriff and Commissioners acted properly in counting the votes which a faithful copy of the original return showed had been given by the qualified voters. But if the
 
 *191
 
 case made in the information had warranted a prohibition, we are of opinion nevertheless, that the writ issued improvidently, because ordered without notice to the Commissioners
 
 de
 
 facto, and without any verification of the facts therein charged. It is an act of high authority to forbid men actually holding an office of public trust, and who, until the contrary is shown, must be presumed to hold it rightfully, from performing the duties which the law attaches to the office, and which they have sworn “ faithfully to discharge.” Such an act of authority will not be exerted, unless
 
 aprima facie
 
 case, well verified, be first made out, showing an apparent necessity for this intervention — nor unless an opportunity be afforded to those, sought to be thus prohibited, of showing cause against it. This we understand to be a well-settled rule of practice. “ Before prohibition granted there ought to be notice to the other party, and therefore it shall not be granted upon motion the last day of term, for it is sufficient to have a rule for cause at the first day of the next term.” Com. Dig. title Prohibition, H. 1. Latch. 7. And where a motion for a prohibition is founded on matter of suggestion only, an affidavit is necessary of the truth of the suggestion.
 
 Godfrey
 
 v
 
 Llewellyn,
 
 Salk. 549.
 
 Saville
 
 &
 
 Wife
 
 v
 
 Kirley,
 
 10 Mad. 385.
 
 Burdett
 
 v
 
 Newell, 2
 
 Ld. Ray. 1211.
 
 Buggin
 
 v
 
 Bennett,
 
 4 Bur. 2035. The information filed by the Solicitor may be sufficient to bring the defendant into Court, to answer to the matters charged, but unsupported by affidavits, and alleging matters wholly
 
 in
 
 pais, it is but a suggestion, and as such cannot authorise a writ of prohibition.
 

 Finally, upon the facts stated on oath by the defendants in their answer, and verified by the affidavits produced, and which for the present must be taken to be true, all ground for a prohibition, if any such there was, has been effectually removed.
 

 This opinion must be certified to the Superior Court of Buncombe.
 

 Per Curiam, Ordered accordingly.